**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KENNETH RAYMOND KOENIG,** | § | |
| **RICHARD POWELL, CHRISTOPHER** | § | |
| **ERNEST REED, ANDREW D. NOVAK,** | § | |
| **MELINDA KAY FARNED,** | § | |
| **VICTORIA CANALES DIZON,** | § | |
| **NORTH CYPRESS MEDICAL CENTER** | § | |
| **OPERATING COMPANY, LTD. and** | § | |
| **NORTH CYPRESS MEDICAL CENTER** | § | |
| **OPERATING COMPANY GP, LLC** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:13-cv-00359** |
| | § | |
| **AETNA LIFE INSURANCE COMPANY** | § | |

**ORDER IN *LIMINE***

It is ORDERED that counsel for all parties and, through such counsel, any and all parties and witnesses, are prohibited from making any mention or interrogation, directly or indirectly, concerning any of the following matters, without first approaching the bench and obtaining a ruling from the Court outside the presence and outside the hearing of all prospective jurors, and jurors ultimately selected in this cause, in regard to the alleged theory of admissibility of such matters:

1.  Any comment, mention, reference, display, offer, or introduction of evidence that North Cypress failed to disclose in response to discovery. Fed. R. Civ. P. 26(a)(1)(A)(ii), (e)(1).  If a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). *See Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).  The burden is on the party that did not abide by Rule 26 to show that the failure to comply was substantially justified or harmless to the opposing party. *Avina v. JP Morgan Chase Bank, N.A.*, No. H-08-1885, 2010 WL 518932, at *1 (S.D. Tex. Feb. 1, 2010).  That inquiry should take place, if at all, outside the presence of the jury.

    GRANTED: _____    DENIED: _____

2.      Any comment, mention, or reference to the existence of a "written" policy for North Cypress's "prompt pay discount" or "Access NCMC" program. North Cypress's CEO and Chairman of the Board (Dr. Robert Behar) testified that North Cypress's "prompt pay discount" or "Access NCMC" program is a written policy, not an oral policy as testified to by other North Cypress witnesses.  Aetna specifically requested North Cypress produce its written "prompt pay discount" policy, but North Cypress refused.[1]  Accordingly, North Cypress should be precluded from offering or introducing any evidence regarding the existence of a "written" policy for these reasons and the reasons set forth in Dkt#255 (Aetna's Motion to Preclude Evidence and for Adverse Inference Instructions at Trial) except for the policy identified by Bates No. SDP-00011008-11010.  *See also* Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

GRANTED: _____     DENIED: _____

3.      Any comment, mention, or reference regarding whether the policy for North Cypress's "prompt pay discount" or "Access NCMC" program (whether written or oral) was approved by legal counsel/attorneys and/or is legal under Texas law.  Aetna requested that North Cypress produce its alleged "prompt pay discount" policy relevant to Aetna's allegations that such policy is illegal under Texas law.  But North Cypress refused, claiming that the policy was prepared by legal counsel and therefore privileged.[2]  North Cypress's policies do not become privileged merely because they were allegedly authored by counsel.  Moreover, by claiming that the "prompt pay discount" policy was approved by legal counsel/attorneys and/or is legal under Texas law, and then refusing to produce the policy on the grounds that it is privileged, North Cypress has made its defense of the "prompt pay discount" policy a material issue in this case, which constitutes a prohibited offensive use of the attorney-client privilege (*i.e.*, North Cypress is attempting to use the attorney-client privilege as both a shield and a sword).  *See Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege."); *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) ("[A] client implicitly waives the attorney-client privilege by testifying about portions of the attorney-client communication."); *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) ("[W]hen confidential communications are made a material issue in a judicial

---

[1] Dkt#255 (Aetna's Motion to Preclude Evidence and for Adverse Inference Instructions at Trial) at pp. 13-14 and Ex. 5 (Behar Depo.) at 312; Ex. 6A.

[2] Dkt#255 (Aetna's Motion to Preclude Evidence and for Adverse Inference Instructions at Trial) at pp. 13-15 and Ex. 5 (Behar Depo.) at 312; Ex. 6A; Ex. 6C.

proceeding, fairness demands treating the defense as a waiver of the privilege. The great weight of authority holds that the attorney-client privilege is waived when a litigant place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." (internal quotations and citations omitted)).  Accordingly, North Cypress's "prompt pay discount" policy is discoverable, and because North Cypress has refused to produce the policy, it should be precluded from any comment, mention, or reference regarding whether the policy was approved by legal counsel/attorneys and/or is legal under Texas law.  Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

GRANTED: _____     DENIED: _____

4.      Any comment, mention, or reference to evidence of North Cypress's alleged damages, including testimony from Glenda M. Tankersley or other witnesses.  North Cypress furnished spreadsheets identifying its claims at issue and alleged computation of damages.  The spreadsheets, however, do not identify the underlying procedures or services that were allegedly provided.  As is industry practice, North Cypress submits claims using billing codes to identify its medical services and procedures (CPT codes for outpatients and DRG codes for inpatients).  Aetna repeatedly requested that North Cypress furnish the relevant billing code data that correspond to North Cypress's at-issue claims, but North Cypress deliberately withheld this information and lied about whether it possessed the information.  North Cypress insisted that it is impossible for it to include the relevant billing codes on its damages spreadsheets, and even had its damages expert (Glenda M. Tankersley) swear two affidavits to this effect.  The affidavits were flatly untrue—as evidenced by the fact that North Cypress provided a spreadsheet to a third party with DRG billing codes for hundreds of the claims at issue. When Aetna confronted North Cypress with this evidence, North Cypress still refused to produce all of the relevant billing codes.  Accordingly, North Cypress should be precluded from offering or introducing any evidence regarding its alleged damages for these reasons and the reasons set forth in Dkt#255 (Aetna's Motion to Preclude Evidence and for Adverse Inference Instructions at Trial).  *See also* Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

GRANTED: _____     DENIED: _____

5.      Any comment, mention, or reference to evidence regarding either (1) whether any of North Cypress's claims at issue were for emergency care services, and/or (2) North Cypress's alleged damages for any medical claim involving emergency care services. Aetna requested medical

records for 655 emergency room (ER) claims (out of 4,788) relevant to Aetna's allegations that North Cypress unnecessarily and improperly admits non-emergent patients through its ER. To further reduce any burden on North Cypress, Aetna reduced the number of requested medical records to 300 ER claims randomly from the 655 ER claims. North Cypress, however, refused to produce comprehensive medical records relevant to its emergency-based claims, and instead produced medical records for only 25 of claims for which Aetna requested medical records. Accordingly, North Cypress's evidence on the emergent nature and any alleged damages regarding the claims at issue should be limited to the claims for which North Cypress emergency-related actually furnished medical records responsive to Aetna's requests. *See* Dkt#255 (Aetna's Motion to Preclude Evidence and for Adverse Inference Instructions at Trial); Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

GRANTED: _____     DENIED: _____

6.     Any comment, mention, or reference to evidence of any kind of North Cypress ever "reversing" any "discounts" offered to patients pursuant to North Cypress's "prompt pay discount" or "Access NCMC" program where patients did not pay within a specified timeframe. According to North Cypress, to be eligible for a "prompt pay discount," patients must pay the discounted amount of their out-of-network patient responsibility at the time of service, or within 120 days of service, else the discount is "reversed" and the patient is billed for the full out-of-network patient responsibility amount. Despite contradictory testimony from North Cypress's Chief Financial Officer (Robert Martel), and despite repeated requests from Aetna's counsel, North Cypress has not produced any letters, bills, or invoices that were sent to Aetna members in which the "discount" was "reversed." Accordingly, North Cypress should be precluded from introducing evidence at trial (through exhibits, testimony, or otherwise) that North Cypress reversed patient discounts and billed the patient for the full out-of-network patient responsibility amount when patients did not pay the discount amount. Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

GRANTED: _____     DENIED: _____

7.     Any comment, mention, or reference to evidence concerning whether any of North Cypress's claims are "clean claims" or were "untimely" paid according to the Texas Prompt Pay Act ("Texas PPA"). North Cypress has failed to disclose any individual with knowledge of relevant facts concerning its allegation that Aetna failed to timely pay clean claims, including whether North Cypress initially submitted its claim timely and whether North Cypress's claims qualify as "clean." North Cypress also

has failed to identify any specific claim or set of claims that it alleges were timely submitted as clean claims and therefore subject to damages, penalties, and interests under the Texas PPA. North Cypress also has failed to designate any experts (retained or un-retained) or provide any expert reports of individuals qualified to analyze North Cypress's claims and give opinions on whether such claims meet the statutory criteria for being subject to the Texas PPA or the amount of damages and methodology for calculating such damages, including penalties and interests. Accordingly, North Cypress should be precluded from offering or introducing any testimony regarding whether any of its claims at issue were timely submitted, qualify as a "clean" claims, or were untimely paid. Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

GRANTED: _____   DENIED: _____

8.      Any comment, mention, or reference to any matter or issue related to *United States ex rel., Rhonda Harkins v. North Cypress Medical Center Operating Company, Ltd., et al.*, Civil Action No. 10-1908, in the United States District Court for the Southern District of Texas, including, but not limited to, Rhonda Harkins, the Civil Investigative Demand issued by the U.S. Attorneys' Offices' to North Cypress, any response thereto, and any findings, determinations, decisions, or elections by the U.S. Attorneys' Office on behalf of the United States of America. The filings related to this case, and the government's investigation, are sealed, and North Cypress failed to produce them to Aetna. This unfairly hinders Aetna's ability to rebut North Cypress's contention that the United States' investigation resulted in "no findings of fraud or wrongdoing." Accordingly, any reference to such evidence would result in unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time. Fed. R. Evid. 401, 402 & 403.

GRANTED: _____   DENIED: _____

9.      Any comment, mention, or reference to other litigation, matters, or proceedings in which Aetna was involved, including, but not limited to, *Stealth, LP, v. Aetna Health Inc. et al.*, Cause No. 2010-20604, in the 234th Judicial District Court of Harris County Texas, for the reason that such evidence would not be relevant to any issue in this case, and would result in unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time. Fed. R. Evid. 401, 402 & 403.

GRANTED: _____   DENIED: _____

10.     Any comment, mention, or reference to any fines, judgments, or penalties against Aetna in other litigation, matters, or proceedings, for the reason that such evidence would not be relevant to any issue in this case, and

would result in unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time. Fed. R. Evid. 401, 402 & 403.

GRANTED: _____   DENIED: _____

11.     Any comment, mention, or reference to whether Aetna did not furnish plan documents in response to requests from North Cypress for such documents, for the reasons stated in Dkt#189 (Defendant's Motion for Partial Summary Judgment on Counts 1-10 of Plaintiffs' Third Amended Complaint) at pp. 6-8.

GRANTED: _____   DENIED: _____

12.     Any comment, mention, or reference to any proposed legislation (including Texas House Bill No. 705 from the 82nd Legislature) relating to the routine waiver of copayment and deductible, for the reason that such evidence would not be relevant to any issue in this case, and would result in unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time.  Fed. R. Evid. 401, 402 & 403.

GRANTED: _____   DENIED: _____

13.     Any comment, mention, or reference to communications from The Methodist Hospital System to Aetna regarding controlling out-of-network utilization at North Cypress (Bates No. A201981) for the reason that such evidence would not be relevant to any issue in this case, and would result in unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time.  Fed. R. Evid. 401, 402 & 403.

GRANTED: _____   DENIED: _____

14.     Any comment, mention, or reference to any matter related to Dr. A. Rizwan Khan, for the reason that such evidence would not be relevant to any issue in this case, and would result in unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time.  Fed. R. Evid. 401, 402 & 403.

GRANTED: _____   DENIED: _____

15.     Any comment, mention, or reference to evidence of any kind that goes beyond the administrative records without North Cypress first establishing that it exhausted its administrative remedies (or that exhaustion would have been futile) on each of the claims at issue prior to the filing of this lawsuit.

GRANTED: _____   DENIED: _____

16.     Any comment, mention, or reference to evidence concerning whether the amounts billed by North Cypress are "usual and customary" or "reasonable and customary" for the services provided. This subject requires an expert, and North Cypress has designated no expert on this topic.  Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

        GRANTED: _____     DENIED: _____

17.     Any comment, mention, reference, or request to Aetna's counsel to produce any evidence or documents in its file or in the possession of Aetna in front of the jury, or any attempt to address questions to Aetna's counsel in front of the jury.

        GRANTED: _____     DENIED: _____

18.     Any comment, mention, reference, or request to Aetna's counsel to stipulate to either the admissibility of any evidence or the truth of any facts in front of the jury.

        GRANTED: _____     DENIED: _____

19.     Any comment, mention, or reference to any objections made by Aetna to North Cypress's written discovery, that Aetna has withheld any documents or data on the basis of such objections, that North Cypress has had difficulty obtaining discovery from Aetna, or any other disparaging remarks that suggest Aetna did not fully cooperate with all pre-trial mattes.

        GRANTED: _____     DENIED: _____

20.     Any comment, mention, or reference to any pretrial rulings by the Court, including on discovery disputes, motions to dismiss, motions for summary judgment, or motions challenging the admissibility of any expert testimony.

        GRANTED: _____     DENIED: _____

21.     Any comment, mention, reference, or suggestion that Aetna is an out-of-state company, a large company, or any other remarks that imply any difference in hometown or financial status between Aetna and North Cypress.

        GRANTED: _____     DENIED: _____

22.     Any comment, mention, or reference to Aetna's affiliated companies that are not named parties in this case, for the reason that such evidence would not be relevant to any issue in this case, and would result in unfair

prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time.  Fed. R. Evid. 401, 402 & 403.

GRANTED: _____     DENIED: _____

23.  Any comment, mention, reference, or suggestion that the term "Aetna" refers to any and all companies that are affiliated with Aetna Life Insurance Company as the named defendant in this case, for the reason that such evidence would not be relevant to any issue in this case, and would result in unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time.  Fed. R. Evid. 401, 402 & 403.

GRANTED: _____     DENIED: _____

24.  Any comment, mention, or reference to Aetna's revenues, net worth, net or gross profits, holdings (including affiliated companies that are not named parties in this case), or assets, for the reason that such evidence would not be relevant to any issue in this case, and would result in unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time.  Fed. R. Evid. 401, 402 & 403.

GRANTED: _____     DENIED: _____

25.  Any comment, mention, reference, or suggestion that Aetna's counsel are "corporate" or "big firm" lawyers, or other such disparaging remarks suggesting or implying that Aetna's lawyers have more resources than counsel for North Cypress.

GRANTED: _____     DENIED: _____

26.  Any comment, mention, reference, or suggestion regarding the assets that Aetna has available for investigating, preparing, and defending this case.

GRANTED: _____     DENIED: _____

27.  Any comment, mention, or reference that Andrews Kurth LLP and/or any of its lawyers represent Aetna in any other matters other than this case.

GRANTED: _____     DENIED: _____

28.  Any comment, mention, or reference to other legal matters handled by Aetna's lawyers.

GRANTED: _____     DENIED: _____

29.  Any comment, mention, or reference that Andrews Kurth LLP and/or any of its lawyers are specialized in the defense of lawsuits arising out of incidents similar to the occurrences made the basis of this case.

GRANTED: _____   DENIED: _____

30.   Any argument or attempt to argue the "Golden Rule" or any other argument, which attempts to place the jury in place of North Cypress, as such arguments are improper and not based upon any evidence to be considered by the jury.

GRANTED: _____   DENIED: _____

31.   Any comment, mention, reference, or suggestion that Aetna has not called to testify any witness equally available to all parties in this case.

GRANTED: _____   DENIED: _____

32.   Any comment, mention, reference, or suggestion, by argument or otherwise, speculating on what would have been the testimony of any witness who does not appear at trial in person or by deposition.

GRANTED: _____   DENIED: _____

33.   Any testimony by persons not previously disclosed as witnesses in pretrial disclosures or in response to Aetna's discovery requests.  Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)

GRANTED: _____   DENIED: _____

34.   Any expert witness testimony concerning opinions (or the basis for those opinions) that have not been previously disclosed. Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

GRANTED: _____   DENIED: _____

35.   Any comment, mention, or reference to any settlement discussion or negotiation or lack of same with Aetna, or any statements that might have been made by any person in connection with such discussions or negotiations, as such would be inadmissible evidence and, if admitted, would necessitate the granting of a mistrial.  Fed. R. Evid. 408.

GRANTED: _____   DENIED: _____

36.   Any comment, mention, or reference that Aetna has filed this Motion in Limine, or any ruling by the Court in response, suggesting or inferring to the jury that Aetna has moved to prohibit proof, or that the Court has excluded proof, of any particular matter.

GRANTED: _____   DENIED: _____

**SO ORDERED** this _____ day of _____, 2015.

_____
Kenneth M. Hoyt
United States District Judge