United States District Court
Southern District of Texas
**ENTERED**
October 27, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH R. KOENIG, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:13-CV-00359 |
| | § | |
| AETNA LIFE INSURANCE COMPANY, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Pending before the Court is the defendants', Aetna Life Insurance Company ("Aetna"),[1] motion for partial summary judgment on Counts 1 – 10 of Plaintiff's Third Amended Complaint (Dkt. No. 189).[2]   The plaintiffs, North Cypress Medical Center Operating Company, Ltd. and North Cypress Medical Center Operating Company GP, LLC, have filed a response in opposition to Aetna's motion, (Dkt. No. 210), and Aetna has filed a reply.  (Dkt. No. 218).  After having carefully considered the motion, response, reply, the record and the applicable law, the Court determines that Aetna's motion for partial summary judgment should be **GRANTED in part and DENIED in part**.

---

[1] Aetna contends that the other individually-named defendants, (*i.e.*, Aetna Insurance Co. of Connecticut, Aetna Health Inc. PA Corp., Aetna Health Inc., and Aetna Health Management, LLC (the "other Aetna entities"), should no longer be party defendants in this case given this Court's dismissal of North Cypress' RICO claim, which was the plaintiffs' only alleged claim against the Aetna entities.  Based on the summary judgment record presented, the Court determines that a dismissal of the other Aetna entities is appropriate.

[2] Aetna moves for a summary judgment on all of the individually-named plaintiffs' claims, specifically Counts 1 – 10.  Aetna's motion in this regard, however, should be DENIED as moot in light of this Court's Order granting the individually-named plaintiffs' Unopposed Motion to Dismiss, without prejudice.  (*See* Dkt. No. 204).  As a consequence, the only remaining plaintiffs are North Cypress Medical Center Operating Company, Ltd. and North Cypress Medical Operating Company GP, LLC.

## II.    FACTUAL BACKGROUND

The plaintiffs, North Cypress Medical Center Operating Company, Ltd. and North Cypress Medical Center Operating Company GP, LLC (collectively, "North Cypress"), own and operate a 150-bed, general acute care hospital located in Cypress, Harris County, Texas which was established on or about January 4, 2007.  North Cypress is a full service hospital offering a broad range of medical services, including an emergency room, surgery center, oncology unit and a pediatrics unit.   North Cypress qualifies as a "participating hospital" under the requirements of the Federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §§ 1395(dd) *et seq*., which requires it to provide appropriate medical screening in its ER facilities to any patient who requests examination or treatment, notwithstanding the patient's ability to pay.  North Cypress treats thousands of patients, including those covered by plans and/or insurance policies that Aetna administers and/or insures.

Aetna is a managed care company organized and existing under the laws of Connecticut that provides access to coverage to its members pursuant to several healthcare benefit plans, including employer-sponsored welfare benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq*.  Aetna acts as either a direct insurer with regard to ERISA fully-insured plans or as a third-party administrator with regard to ERISA self-funded plans.  Aetna provides its services/products under written Administrative Services Agreements ("ASA") with various plan sponsors pursuant to which Aetna is given discretionary authority to administer such plans.

Pursuant to North Cypress' Third Amended Complaint, Aetna's plans at issue, namely its Preferred Provider Organization ("PPO") and Point of Service ("POS") plans, permit subscribers to obtain healthcare services from medical providers, such as North Cypress, who set their own

fee schedules and have no contractual relationship with Aetna to provide services to its members at reduced, pre-negotiated rates.  Such providers are often referred to as "out-of-network" or "non-participating" medical providers.  Certain Health Maintenance Organization ("HMO") plans insured and/or administered by Aetna are also at issue in this case as Aetna's subscribers utilized North Cypress' emergency room services which are covered, at least in part, by such plans.  North Cypress maintains that Aetna is required to pay benefits for such out-of-network and emergent care services based on the usual, customary and reasonable care rates ("UCR") for such services in the relevant health care market and/or the rate defined in the plan.

Beginning in January of 2007, North Cypress opened as an out-of-network provider after notifying Aetna it was implementing a "prompt pay discount" program through which some patients, for whom North Cypress was out-of-network, would get a discount on their coinsurance obligation if they paid upfront or within a limited period of time.  North Cypress argues that its discount approach made good business sense because it benefitted the hospital, its patients, and the community.  Since North Cypress was not a contracted medical provider with Aetna, it submitted healthcare claims to Aetna seeking reimbursement for medical services rendered by virtue of assignments of benefits it received from various Aetna plan members for services and/or treatment they had obtained at North Cypress.  Aetna processed and administered these healthcare claims.

On February 12, 2013, however, North Cypress commenced the instant action against Aetna for substantial underpayment and/or nonpayment of certain healthcare claims from 2009 through 2014.  Specifically, North Cypress alleged claims against Aetna for failing to comply with various group plans in violation of ERISA, breaching its fiduciary duties under ERISA, failing to provide a full and fair review under ERISA, violating claims procedure under ERISA,

violations of the Texas Insurance Code, breach of contract, and failing to comply with requests for information pursuant to 29 USC § 1132(c)(1)(B). (*See* Dkt. No. 1). After multiple amendments, North Cypress, on July 21, 2014, filed Plaintiffs' Third Amended Complaint against Aetna and the other Aetna entities alleging claims for: (1) benefits and/or money damages under ERISA § 502(a)(1)(B) and ERISA § 502(a)(3), 29 U.S.C. § 1132(a); (2) violation of fiduciary duties of loyalty and due care under ERISA; (3) violations of ERISA § 502(c), 29 USC § 1132(c); (4) breach of contract as to non-ERISA health plans; (5) unjust enrichment; (6) violations of Texas Insurance Code, as to non-ERISA health plans; (7) violations of Texas Deceptive Trade Practices Act, Tex. Ins. Code § 541; (8) violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (9) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(C); (10) request for information under 29 USC § 1132(c)(1)(B); (11) attorneys' fees; (12) exemplary damages; and(13) a declaration that North Cypress submitted all claims for reimbursement in compliance with state and federal laws, a declaration that North Cypress did not engage in any acts of fraud or misrepresentation in its attempts to recover benefits, a declaration that North Cypress, as a beneficiary of its patients' claims, is entitled to be fully reimbursed by Aetna at the UCR or as set forth in the plans or policies and a declaration that it would have been futile for North Cypress to continue to pursue administrative remedies through Aetna.

On May 31, 2013, Aetna filed a counterclaim against North Cypress for allegedly engaging in fraudulent billing and illegal "kickback" schemes involving patient referrals, charging grossly excessive fees, fraudulently admitting non-emergent patients through the emergency room, and improperly waiving patient co-pays, deductibles and co-insurance. In its Original Counterclaim, Aetna asserts claims against North Cypress for: (1) common law fraud;

(2) negligent misrepresentation; (3) money had and received; (4) unjust enrichment; (5) injunctive relief requiring North Cypress to disclose when referring physicians have an ownership interest in North Cypress and enjoining North Cypress from charging unreasonable fees, waiving fees or making other promises to induce Aetna members to use its facility, including ensuring them that patient responsibility charges would not be more for North Cypress' out-of-network services; (6) a declaratory judgment that North Cypress' billing practices violate multiple Texas statutes and that Aetna is entitled to recoup all overpayments paid to North Cypress; (7) exemplary damages; and (8) attorneys' fees.  Alternatively, Aetna seeks equitable relief under ERISA, 29 U.S.C. § 1132(a)(3), including, a constructive trust over fees improperly obtained as a result of North Cypress' fraudulent conduct, an order requiring the return of such funds, and an order permanently enjoining North Cypress from disposing of or transferring any of said funds.

Aetna now moves for a partial summary judgment on certain of North Cypress's claims.[3]

## III.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*,

---

[3] In its motion, Aetna specifically asserts that it does not seek summary judgment on the following claims brought by North Cypress:  (1) Count 1 – ERISA § 502(a)(1)(B) to recover benefits due to North Cypress under the terms of the plans and policies; (2) Count 4 – breach of contract as to non-ERISA group health plans; and (3) Count 6- violations of provisions of Tex. Ins. Code as to non-ERISA group health plans.

338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075).  "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'"  *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)).  It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted).  Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'"  *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted).  When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]."  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536,

540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).  Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).  Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## IV.     ANALYSIS AND DISCUSSION

### A.     The Plaintiffs' Claims Under ERISA § 502(a)(3)

In Count 1 of the Plaintiffs' Third Amended Complaint, North Cypress seeks relief against Aetna under both ERISA § 502(a)(1)(B) and ERISA § 502(a)(3).  (*See* Dkt. No. 155, ¶¶ 66 - 73).  In Count 2 of the Plaintiffs' Third Amended Complaint, North Cypress also seeks relief against Aetna for violations of its fiduciary duties under ERISA § 502(a)(3).  (*Id.*, ¶¶ 66 - 73).  Specifically, North Cypress requests to be excepted from any exhaustion requirement with respect to any internal remedies and further seeks restitution, injunctive relief, declaratory relief and Aetna's removal as a breaching fiduciary.  (*Id.*, ¶ 81).   Aetna moves for judgment as a matter of law on North Cypress' claims brought pursuant to ERISA § 502(a)(3), arguing that Fifth Circuit precedent precludes North Cypress from simultaneously proceeding under § 502(a)(1)(B) and ERISA § 502(a)(3).  This Court agrees.

Section 502(a)(3) authorizes a plan participant or beneficiary to institute a civil action: "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."   29 U.S.C. § 1132(a)(3). Nevertheless, it is well-settled law that relief under this section is restricted to "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *see also Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (reasoning that "[b]ecause [the plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of Section 1132(a)(3) would be inappropriate").  The Fifth Circuit has reasoned that if a plaintiff has adequate redress for his disavowed claims through his right to initiate a civil action under § 1132(a)(1)(B), he has an adequate remedy and *may not also* pursue a claim for breach of fiduciary duty under § 1132(a)(3). *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999), *abrogated on other grounds by CIGNA Corp. v. Amara*, ―― U.S. ――, 131 S. Ct. 1866, 1877, 179 L. Ed.2d 843 (2011); *see also Tolson*, 141 F.3d at 610.

North Cypress argues, however, that new Supreme Court authority and Fifth Circuit authority make it inappropriate to dismiss § 502(a)(3) claims simply because a plaintiff is seeking monetary damages.  It maintains that since it is seeking monetary damages under both ERISA provisions, it may simultaneously bring these actions.  While *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011) and *Central States SE and SW Areas Health and Welfare Fund v. Health Special Risk, Inc.*, 756 F.3d 356, 361 (5th Cir. 2013), may have altered the framework of many § 502(a)(3) claims, neither case, however, modified the general rule that if relief is

available under § 502(a)(1)(B), equitable relief is not also available under § 502(a)(3).  *See Lopez v. Liberty Life Assur. Co. of Boston*, Civil Action No. H-13-2460, 2013 WL 5774878, at *4 (S.D. Tex. Oct. 24, 2013).  Accordingly, Aetna is entitled to judgment as a matter of law on the plaintiffs' § 502(a)(3) claims as money damages are simply not authorized under this section. *See Kinnison v. Humana Health Plan of Texas, Inc.*, No. C–07–381, 2008 WL 2446054, at *8 (S.D. Tex. June 17, 2008) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (observing that "[m]oney damages are, of course, the classic form of legal [and not equitable] relief" and are, therefore, not obtainable under § 502(a)(3))); *see also McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000) (citing *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir. 1992) ("When a [participant or] beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA [, 29 U.S.C. § 1132(a)(1)(B),] rather than a [breach of] fiduciary duty claim brought pursuant to § 502(a)(3) [, § 1132(a)(3)].").

### B.    The Plaintiffs' Claim for Penalties Under ERISA § 502(c)

In Count 3 of the Plaintiffs' Third Amended Complaint, North Cypress maintains that as assignees of benefits from patients who are covered under ERISA plans administered by Aetna, it is entitled to penalties under ERISA § 502(c)(1)(B) against Aetna due to Aetna's refusal to supply it with both the plan and plan-associated documents upon request.  (*See* Dkt. No. 155, ¶¶ 82 - 86 at 26 - 27).  Specifically, they contend that "Aetna, as a plan administrator, is liable to [them] in the amount of $100 per day for failure to timely provide the requested plan and plan-associated documents."  (Dkt. No. 155, ¶ 86 at 27).  Additionally, in Count 10 of their Third Amended Complaint, North Cypress asserts that Aetna's acts and omissions in failing to comply with its requests for information, pursuant to 29 U.S.C. § 1132(c)(1)(B), entitles it to a civil

penalty and/or sanction in the amount of $100 per day.  (*Id.*, ¶ 129 at 36).  In its response in opposition to Aetna's motion for partial summary judgment, North Cypress maintains that Aetna should be treated as a *de facto* plan administrator when equitable estoppel principles are applied where, as here, it acted as the plan administrator with complete control of the plans and how benefits were to be paid thereunder.  (*See* Dkt. No. 210, ¶¶ 12 – 14 at 5).  Aetna moves for a summary judgment on North Cypress' claims for penalties under ERISA § 502(c)(1)(B), alleging that North Cypress cannot meet its burden that Aetna is an "administrator" subject to penalties since it is neither the designated plan administrator nor the plan sponsor of any of the plans at issue.

ERISA § 104(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description . . . or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4). Pursuant to ERISA § 502(c), "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary [for civil penalties up to $100 per day.]"  29 U.S.C. § 1132(c)(1)(B). ERISA § 502(c), by its very terms, applies to the plan "administrator" which, within the meaning of ERISA, includes either the person specifically designated as such by the plan or "if an administrator is not so designated, the plan sponsor."  29 U.S.C. § 1002(16)(A).  If an administrator is not designated by the plan and "a plan sponsor cannot be identified," the administrator is "such other person as the Secretary may by regulation prescribe."  29 U.S.C. §1002(16)(A)(iii).

The evidence in the record establishes that Aetna is neither the designated administrator nor the plan sponsor of the numerous plans at issue in this case but rather serves as the third-party administrator pursuant to various ASAs entered into with respective plan sponsors. North Cypress, nevertheless, insists that the assignment of benefits that it received from patients insured by Aetna confers upon it beneficiary status under § 502(a) of ERISA which, in turn, entitles it to pursue remedies against Aetna under § 502(c)(1)(B).  (*See* Dkt. No. 155, ¶ 84 at 26). "The Fifth Circuit, however, distinguishes between the 'rights of a beneficiary as referred to in ERISA, to receive covered medical services or reimbursement, and one entitled to receive payment as an assignee of such a beneficiary.'" *Tenet Healthcare Ltd. v. UniCare Health Plans of Texas, Inc.*, 2008 WL 5101558, at * 7 (S.D. Tex. Nov. 26, 2008) (citing *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 576 (5th Cir. 1992), *overruled in part by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229, 230 (5th Cir. 2012)).  The assignment of a right to payment, without more, does not automatically convert North Cypress into a "beneficiary" for purposes of standing to sue for penalties under § 502(c).  *See Tenet Healthcare*, 2008 WL 5101558, at *7 (holding that UniCare, an HMO who had entered into a managed care agreement with Tenet, a hospital, to administer claims for benefits for covered services, owed no duty to provide requested plan information and was not subject to penalties under § 502(c) because it was not the named administrator).  In *Crowell v. Shell Oil Co.*, for example, a Texas district court noted the following with regard to the penalties accessible under § 502(c):

> The plain and unambiguous language of § 1132(c)(1) [Section 502(c)(1)] requires that the plaintiff seek relief from the plan administrator, who is *personally liable* for any disclosure violations.  *See* § 1132(c)(1).  The statute makes no provision for liability to attach to any other person, even when the administrator is an employee of the plan sponsor.  *See, e.g., Thorpe v. Retirement Plan of the Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1996) ("Because the Retirement Plan

specifically designates the Board as its administrator, the Board is the only party liable to [p]laintiff under § 1132(c)"); *Klosterman v. W. Gen. Mgmt., Inc.,* 32 F.3d 1119, 1122 (7th Cir. 1994) ("[A]ny cause of action for violations of these disclosure requirements is proper only against the plan administrator"); *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993) (same).   Accordingly, the court holds that a plaintiff must name the designated plan administrator as a defendant to recover civil penalties under § 1132(c)(1) [Section 502(c)(1)].   Failure to do so is fatal to [such a] claim.

*Crowell*, 481 F. Supp.2d 797, 814 (S.D. Tex. 2007).

Here, the facts do not support Aetna being deemed the plan administrator under an ERISA-estoppel theory.[4]   First, "[Aetna's] role as claims administrator [does not by itself] bring it within the reach of [ERISA § 104(b)(4)] and [ERISA§ 502(c)(1)]."   *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009) (holding that parties other than the designated administrator, including third-party claims administrators like Aetna here, cannot "be held liable for the failure to supply plan participants with the plan documents they seek"); *see also Jones v. UOP*, 16 F.3d 141, 145 (7th Cir. 1994) (recognizing that "only a minority of the circuits have shown a willingness to recognize *de facto* plan administrators").   Second, the proof tendered by North Cypress in this case does not support Aetna being deemed the plan administrator by means of an estoppel theory as there is no evidence that Aetna made any misrepresentations to plan participants or beneficiaries regarding its status.   Nor has any evidence been adduced in this case that Aetna ever held itself out to North Cypress and/or other plan participants or beneficiaries as the main plan administrator to the exclusion of any designated plan administrators or that Aetna otherwise restricted them to deal only with it.   Moreover, North Cypress has not tendered any evidence of the type of "extraordinary circumstances" sufficient to support an ERISA-estoppel

---

[4] To prevail on an ERISA-estoppel claim under federal common law, a plaintiff is required to establish:  "(1) a material misrepresentation, (2) reasonable and detrimental reliance upon that representation, and (3) extraordinary circumstances."   *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 374 (5th Cir. 2008) (citing *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 – 45 (5th Cir. 2005)).   With respect to an ERISA-estoppel claim, "there can be no 'reasonable reliance on informal documents in the face of unambiguous Plan terms.'"   *Nichols*, 532 F.3d at 374 (citing *Mello*, 431 F.3d at 447) (other citation omitted).

claim.  *See High v. E-Sys., Inc.*, 459 F.3d 573, 580 n.3 (5th Cir. 2006); *see also Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d. Cir. 2003) (quoting *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1011 (3d. Cir. 1997) (noting that "'extraordinary circumstances,' generally involve acts of bad faith . . . attempts to actively conceal a significant change in the plan, or commission of fraud.")).

While the Fifth Circuit has considered the *de facto* plan administrator theory, it has consistently refused to recognize such a theory in cases where, as here, reliance would be deemed unreasonable in light of the unambiguous plan documents.  *See Fisher* v. *Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990) (recognizing that while "a *de facto* plan administrator theory has intuitive appeal," § 502(c), as a penalty provision, must be strictly interpreted); *see also High*, 459 F.3d at 580 (quoting *Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998) (reasoning "that a 'party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents.'")).  Moreover, construing the term "administrator" to include Aetna in this instance would not only give the term a meaning different than that defined in ERISA but would also deprive the term of the meaning and/or distinction that Congress expressly intended.  Indeed, this Court's authority does not extend to redrafting or modifying the text of the statute.  To do so in this instance would be to contravene one of ERISA's basic principles—that a plan not "be modified or superceded by extrinsic evidence."  *High*, 459 F.3d at 580 (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 907 n.20 (3d. Cir. 1995) (reasoning that "the Third Circuit emphasized that a basic principle of ERISA is that a plan cannot be modified or superceded by extrinsic evidence.")).  Therefore, Aetna is entitled to judgment as a matter of law on North Cypress' claim for penalties under ERISA § 502(c).

### C.      The Plaintiffs' Claim for Unjust Enrichment

In Count 5 of the Plaintiffs' Third Amended Complaint, North Cypress alleges that Aetna has been unjustly enriched with regard to both ERISA and non-ERISA plans[5] by "wrongfully retain[ing] monies that rightfully and equitably should have been paid to [it]."  As such, it alleges that it is entitled to restitution of all benefits that Aetna received as a result of its conduct.  (*See* Dkt. No. 155, ¶¶ 92 - 94 at 28).  Aetna moves for a summary judgment on North Cypress' unjust enrichment claim, asserting that it is preempted by ERISA and/or the plans pursuant to the express contract rule.  (*See* Dkt. No. 189 at 9 – 10).   In its response in opposition to Aetna's motion for partial summary judgment, North Cypress appears to concede that its claim for unjust enrichment is preempted as to the ERISA plans.[6]  (*See* Dkt. No. 210 at 6, ¶ 16.).  It, nevertheless, denies that the express contract rule applies to bar its unjust enrichment claim against Aetna as to the non-ERISA plans.  (*Id.*)  It maintains that the express contract rule is inapplicable in this case because:  (1) no contract exists between the plan members and Aetna; and (2) the plan members are not parties to any contracts between Aetna and the plan sponsors.

Generally, each benefit plan is a valid contract between "the participants of the Plan" and the plan sponsor, thus, a participant's right to receive payments under the plan is a contractual right.  *In re Johnson*, 439 B.R. 416, 429 (E.D. Mich. 2010); *see also Sprague*, 133 F.3d at 395 - 96.  "[W]hen a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, [such as unjust enrichment]."  *Fortune Prod. Co. v.*

---

[5]  The non-ERISA plans include government plans, church plans, plans which receive no contributions from employers of participants, and plans maintained solely to comply with workers' compensation, unemployment compensation, or disability insurance laws.  *See* ERISA § 4(a), 29 U.S.C. §1003(a).

[6]  ERISA preempts state law claims that concern the primary administrative functions of benefit plans, such as determining a plan participant's eligibility for benefits and the amount of benefits.  Similarly, an unjust enrichment claim seeks the return of funds taken and thus, constitutes an action to recover benefits due under a plan.  *See Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004); *see also Pierce v. United Rentals, Inc.*, No. 3:01-CV-0995-K, 2003 WL 22289882, at *4 (N. D. Tex. Aug. 28, 2003) (determining that plaintiff's unjust-enrichment claim was preempted because it "would not exist but for the ERISA plan").

*Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (reasoning that "when a party claims that it is owed more than the payments called for under a contract, there can be no recovery for unjust enrichment 'if the same subject is covered by [an] express contract.'"); *see also TIB--The Indep. Bankers Bank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014) ("because a claim for unjust enrichment is based on quasi-contract, it is 'unavailable when a valid, express contract governing the subject matter of the dispute exists'") (internal citations omitted).  "This rule is applicable not only when the plaintiff is seeking to recover in equity from the party with whom [it] expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance." *Protocol Techs, Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App.– Eastland 2013, no pet.); *see also Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 CIV. 2800 (LMM), 2007 WL 683974, at *10 (S.D.N.Y.  Mar. 5, 2007) (citing *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 17 F. Supp.2d 275, 311 (S.D.N.Y. 1998) ("unjust enrichment claims are 'ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists . . .  whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract.'")).

North Cypress' unjust enrichment claim would not exist but for the non-ERISA plans at issue.  Indeed, the plans' terms are central to the issue of whether or not Aetna wrongfully denied, withheld payment and/or substantially underpaid North Cypress' claims.  The plans are valid, express contracts, to which North Cypress is a beneficiary/party by way of various patient assignments.  Thus, North Cypress' claims in this regard are derivative of the plan participant's or patient's contractual rights under the plan and as such, are barred by the express contract rule.

Therefore, Aetna is entitled to a summary judgment on North Cypress' unjust enrichment claim alleged in Count 5.

### D.   The Plaintiffs' Claims for Insurance Code Violations

In Count 7 of the Plaintiffs' Third Amended Complaint, North Cypress argues that Aetna violated Texas Insurance Code § 541 by "determining the amounts of plan benefits that would be paid to plan beneficiaries based on maximizing profit to Aetna (via compensation to Aetna as a percentage of savings for the denial of claims), rather than based on the terms of the plans and on the applicable statutes and regulations."  (Dkt. No. 155, ¶ 107).  North Cypress asserts that Texas Insurance Code § 541 prohibits conduct enumerated in Texas Business & Commerce Code § 17.46(b), namely § 17.46(b)(12), which prohibits "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, **or which are prohibited by law**."  (Dkt. No. 155, ¶ 102) (emphasis in original).  North Cypress maintains that Aetna's compensation, as a third-party administrator, is prohibited by Tex. Ins. Code § 4151.117(b) because Aetna was "compensated based on a percentage of savings from the denial of claims."  (*Id.*, ¶¶ 98 - 112).  Aetna moves for a summary judgment on North Cypress' claim under Tex. Ins. Code § 4151.117(b), contending that it is preempted by ERISA and/or no private right of action exists for such a violation.  This Court agrees.

First, Tex. Ins. Code § 4151.117, by its terms, does not apply to fully-insured plans,[7] whether governed by ERISA or not.  Nor does it apply to any compensation that Aetna, as an insurer, may have allegedly received with respect to such plans.  Specifically, Chapter 4151 of the Texas Insurance Code exempts insurers, like Aetna, that are "acting with respect to a policy

---

[7] "An insured, or fully-insured plan is one in which the plan purchases insurance from a regulated insurance company.  A self-insured plan is one in which benefits are paid from contributions supplied by employers without outside insurance."  *Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund*, 933 F. Supp. 1124, 1131 n.7 (D. Mass. 1996) (citing *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 732 (1985)).

lawfully issued and delivered by the insurer . . . under the law of a state in which the insurer . . . was authorized to engage in the business of insurance[.]"  Tex. Ins. Code § 4151.002(3).  It is undisputed that Aetna is authorized to engage in the business of insurance in Texas, and that the fully-insured policies in this case were lawfully issued.

Second, in *NGS Am., Inc. v. Barnes*, the Fifth Circuit expressly held that "article 21.07–6 of the Texas Insurance Code,[8] [later codified as § 4151.117,] as applied to third-party administrators of ERISA-governed insurance plans *in their capacity as* third party-administrators of ERISA-governed insurance plans, is pre-empted by ERISA."  998 F.2d 296, 299 - 300 (5th Cir. 1993) (emphasis in original).  In *Barnes*, the Texas Insurance Commissioner argued that article 21.07–6 regulates the business of insurance as permitted by the savings clause of § 514(b) and is merely a licensing statute that does not "relate to" an ERISA plan, because it applies to administrators "regardless of whether they contract to provide services to conventional insurance products or ERISA plans."  *Barnes*, 998 F.2d at 299.  The Fifth Circuit rejected the Commissioner's argument, reasoning that "art. 21.07–6 imposes significant burdens on administrators of ERISA-governed employee benefit plans."  *Id.* at 300.  It further reasoned that "[i]t is these burdens of complying with conflicting state regulations that Congress sought to eliminate by enacting ERISA."  *Id.* (internal citations omitted).  North Cypress' attempts to distinguish *Barnes* as inapplicable here lack merit and are misplaced.

Third, pertinent Texas statutes exclude both self-funded and fully-insured ERISA plans from § 4151.117's ambit.  *See* 28 Tex. Admin. Code § 7.1601(d) ("This subchapter does not

---

[8] The previous version of § 4151.117 included only the administrator compensation provisions now codified as § 4151.117(a).  *See* Act of June 21, 2003, 78th Leg. R.S., ch. 1274, § 7, 2003 Tex. Gen. Laws 3611, 4115 (non-substantive revision codifying article 21.07–6 as § 4151.117).  Under the current version, an administrator's compensation is now *also* subject to § 4151.117(b).

apply to a person acting as or holding itself out as an administrator for an ERISA qualified employee welfare benefit plan that is exempt from regulation by this state with respect to that particular employee welfare benefit plan.").  Section 4151.117 is thus preempted by ERISA and has no application to how Aetna is compensated under any of the plans governed by ERISA, whether self-funded or fully-insured.

Finally, even assuming that Aetna is subject to liability under § 4151.117(b), no private right of action exists for its alleged violations of § 4151.117.  *See* Tex. Ins. Code §§ 4151.301 - .309 (permitting only specified governmental actors to pursue remedies for violations of § 4151.117).  Therefore, Aetna is entitled to a summary judgment on North Cypress' claim for insurance violations alleged in Count 7.

### E.     The Plaintiffs' Claim for Violation of the Lanham Act

In Count 8 of the Plaintiffs' Third Amended Complaint, North Cypress, in its individual capacity as a competitor of Aetna, alleges that Aetna is liable under the Lanham Act, 11 U.S.C. § 1125(a), for false advertising.  Specifically, North Cypress asserts the following:

> Aetna and [North Cypress] are competitors in the market for the provision of health care services.  Aetna seeks to have providers who participate in Aetna's network provide health care services to as many patients as possible.  Meanwhile, [North Cypress] seeks to [sic] themselves to provide health care services on an out-of-network basis to as many patients as possible.  Indeed, Aetna engaged in the aforementioned communications to members attempting to discourage members from receiving services at [North Cypress] for the purpose of inducing members to procure health care services from providers who participate in Aetna's network rather than from [North Cypress] on an out-of-network basis.  Similarly, Aetna engaged in the aforementioned communications to plan sponsors (including, but not limited to, Harris County and Conoco-Phillips) by which Aetna convinced such plan sponsors to exclude services at [North Cypress] except for supposed 'true emergencies,' for the purpose of inducing members to procure health care services from providers who participate in Aetna's network rather than from [North Cypress] on an out-of-network basis.  Such communications by Aetna to members and to plan sponsors were made with the intent and effect of damaging [North Cypress] reputation in the marketplace so as to induce members to procure health care services from providers who participate in Aetna's network

rather than from [North Cypress] on an out-of-network basis.  The same type of acts and communications occurred between Aetna and Methodist Willowbrook Hospital.

(Dkt. No. 155, ¶ 117).

North Cypress further maintains that "Aetna's actions constitute the use of false and misleading representations of material fact in interstate commerce in connection with commercial advertising and promotion of Aetna's products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)."[9]  (*Id.*, ¶ 118).  Aetna moves for a summary judgment on North Cypress' false advertising claim, arguing that North Cypress does not identify any alleged false communications or any viable Lanham Act injury, as its communications/contacts with plan members and/or plan sponsors does not constitute false advertising within the meaning of the Lanham Act.

Section 1125(a) of the Lanham Act "creates two distinct bases for liability:  false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S. Ct. 1377, 1384 (2014) (citing *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1108 (9th Cir. 1992)).  Here, North Cypress has alleged only false advertising against Aetna.  In support of its false advertising claim, North Cypress alleges that Aetna engaged in false or misleading conduct in violation of the Lanham Act by, *inter alia*:

---

[9] The Lanham Act's bar against false advertising, Section 43(a)(1)(B) provides, in relevant part, as follows:

> (1) Any person who, on or in connection with any goods services, or any container for goods, uses in commerce any word term, name, symbol, or device, or any combination thereof, or any false designation of origin false or misleading description of fact or false or misleading representation of fact, which—
>
> • • •
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another's goods services, or commercial activities shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

(1) repeatedly communicating to various plan sponsors untrue statements regarding North Cypress' business practices, including that North Cypress "(a) engaged in a pattern of fraudulent billing, (b) admitted non-emergent members through its ER in order to make more money, (c) provided non-medically necessary services in order to make money and (d) waived patient responsibilities"; and (2) sending mailings to all members within five to ten miles of the facility advising them not to utilize North Cypress' treatment facilities.  (Dkt. No. 155, ¶¶ 38(e), 39, 40 & 50).

Notwithstanding the aforementioned, Aetna contends that North Cypress does not identify any alleged false communications or advertising disseminated by it to plan members or sponsors.  It also contends that had North Cypress provided evidence of mailings or contact with plan members and sponsors, which it vehemently denies that it has, these alleged private communications to existing clients or plan members, as part of Aetna's obligations as claims administrator with regard to their plans, would not constitute actionable "commercial advertising or promotion" within the meaning of the Lanham Act.  Aetna further maintains that merely urging a member not to use a particular provider is not a Lanham Act violation in the absence of falsity.

The Fifth Circuit has adopted the following summary of requirements for demonstrating "commercial advertising or promotion" as the terms are used in § 1125(a)(1)(B):  "(1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services;" and (4) that is sufficiently disseminated to "the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."  *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (citing *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp.

1521, 1535 - 36 (S.D.N.Y. 1994)).   Isolated private statements, however, are generally "not sufficiently disseminated to constitute advertising."   *Synygy, Inc. v. Scott–Levin, Inc.*, 51 F. Supp.2d 570, 576 (E.D. Pa. 1999), *aff'd*, 229 F.3d 1139 (3d Cir .2000).   "[F]or purposes of the Lanham Act's definition of 'commercial advertising or promotion,' both the required level of circulation and the relevant 'consuming' or 'purchasing' public addressed by the dissemination of false information will vary according to the specifics of the industry."   *Seven–Up Co.*, 86 F.3d at 1385.   North Cypress intimates, without more, that "the relevant market for the medical services provided by both Aetna's network and [North Cypress] (on an [out-of-network] basis) is small."  (Dkt. No. 210, ¶ 32 at 14).

Even assuming that North Cypress could establish that Aetna's alleged conduct falls within the scope of "commercial advertising or promotion" within the meaning of the Lanham Act, Aetna argues that North Cypress cannot identify an injury within the meaning of the Act.  In order to establish a claim for false advertising under the Lanham Act, a plaintiff must demonstrate the following:   "(1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff[ ] ha[s] been or [is] likely to be injured as a result."   *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (citing *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1042 (8th Cir. 1999); *see also King v. Ames*, 179 F.3d 370, 373 - 74 (5th Cir. 1999)).   In this case, in support of its claim of injury, North Cypress alleges that Aetna "convinced" plan sponsors, Harris County and ConocoPhillips, to exclude North Cypress' services from coverage, and refers to data suggesting that it admitted

fewer members of these employer-sponsored plans after Aetna's suggested exclusions.[10] Pursuant to the standard set forth by the Fifth Circuit, North Cypress is required to, *inter alia*, provide evidence that the decline in business was "fairly traceable" to the false advertising. *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 331 – 33 (5th Cir. 2002) (reasoning that provider failed to state a Lanham Act claim because there was "no evidence demonstrating that [the provider] ever received a lower payment for his services than he would have in the absence of the advertisements"). "Normally, a plaintiff's success in demonstrating that a claim is misleading or deceptive turns on extrinsic evidence in the form of a consumer survey." *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1563 (S.D. Tex. 1996) *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998) (citing *Johnson & Johnson–Merck Consumer Pharm. Co. v. Rhone–Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 - 30 (3d Cir. 1994)).

North Cypress does not tender any survey evidence to support its false advertising claim. Nor does it provide evidence of any false advertising disseminated by Aetna or otherwise demonstrate that it lost business as a consequence of any false or misleading commercial advertising or promotion circulated by Aetna. In fact, the evidence in the record demonstrates the contrary. David E. Kester, the representative designated to speak on behalf of Harris County's self-insured plan, testified that:

- Harris County is "a self-funded employer. [As a self-funded employer,] [w]e determined what the funding of the rates are. And so, the rates would be based on the anticipated claims and expenses of the plan."

- Harris County expressed concerns to Aetna about the amount of North Cypress' bills, as they believed that North Cypress' charges were higher in relation to others. As such, Harris County expected Aetna "[t]o figure

---

[10]Specifically, North Cypress, in their response in opposition to Aetna's motion, asserts that "[b]etween January 1, 2007 and March 31, 2011, [North Cypress] had approximately 184 Harris County admissions and after its exclusion, it only had 86 admissions and from January 1, 2007 through March 31, 2012, there were 54 ConocoPhillips admissions and after April 1, 2012, there were only 11 admissions." (Dkt. No. 210, ¶ 32 at 14).

out why they were higher and if there's any way that they could be lower." He stated that Harris County had become "[f]ed up and frustrated."

- Harris County believed it did not get "a good answer" from Aetna about North Cypress' excessive bills, and, ultimately, Harris County decided to amend its plan "so that no benefits would be paid [to North Cypress] with the exception of emergency services."

(Dkt. No. 219, Ex. A., David E. Kester Depo. at 15, 31, 71- 72, 67 – 68, 121 & 134 – 35.) Kester's testimony indicates that Aetna's communications to Harris County, as a self-funded plan sponsor, were typical private, business discussions relative to their ongoing business arrangement and not of the type deemed actionable under the Lanham Act. *See First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 - 04 (7th Cir. 2001) (holding that activities of non-directed PPO's executives and lawyers did not constitute "advertising" actionable under the Lanham Act since their representations were made over a conference table in an effort to negotiate a contract).

The record is otherwise devoid of any evidence that Aetna made false or even misleading statements concerning North Cypress' medical services and/or practices or that it caused any such false or misleading communications to be sufficiently disseminated within the relevant industry thereby causing consumers to avoid obtaining treatment at North Cypress altogether. *See Lexmark*, 134 S. Ct. at 1391 (recognizing that a Lanham Act injury "occurs when deception of consumers causes them to withhold trade from the plaintiff"). Accordingly, North Cypress has failed to raise a genuine issue of material fact on its claim of false advertising under the Lanham Act and Aetna is entitled to a summary judgment on its claim.

###### F.  The Plaintiffs' Claim for Violation of 18 U.S.C. § 1962(c)

As a final matter, Aetna moves for judgment as a matter of law on North Cypress' RICO claim, asserted in Count 9 of the Plaintiffs' Third Amended Complaint, brought pursuant to 18 U.S.C. § 1962(c).  North Cypress' RICO claim, however, was previously dismissed on May 29, 2015, pursuant to this Court's Order dated May 29, 2015, and entered as Dkt. No. 201. Accordingly, Aetna's motion for summary judgment with regard to this claim is denied as moot.

## V.  CONCLUSION

Based on the foregoing analysis and discussion, Aetna's motion for partial summary judgment is **GRANTED in part and DENIED in part**.

It is so **ORDERED**.

SIGNED on this 27th day of October, 2015.

_____
Kenneth M. Hoyt
United States District Judge